UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFREY SCOTT FRASIER, JR.,

                              Plaintiff,               **DECISION & ORDER**

                                                              17-CV-00177[2]

v.

NANCY A. BERRYHILL, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                              Defendant.[1]
_____

        This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). Before me are the parties' cross-motions for judgment on the pleadings [8, 14].[3] Having reviewed the parties' submissions [8, 14, 15], I order that this case be remanded to the Acting Commissioner for further proceedings.

## BACKGROUND

        On January 18, 2013, plaintiff, who was then 28 years old, filed an application for DIB, alleging a disability onset date of October 19, 2012 due to a variety of psychological impairments, including bipolar disorder, manic depression, impulse disorder, and chronic

---

[1]     Since Nancy A. Berryhill is now the Acting Commissioner of Social Security, she is substituted for Carolyn W. Colvin as the defendant in this action pursuant to Fed. R. Civ. P. ("Rule") 25(d). *See* Quintana v. Berryhill, 2017 WL 491657, *7 n. 1 (W.D.N.Y. 2017).

[2]     The parties have consented to the jurisdiction of a Magistrate Judge [16].

[3]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers located on the bottom of the document pages.

depression (R. 74).[4] After plaintiff's claim for DIB was initially denied, an administrative hearing was held on March 26, 2015 where plaintiff and a vocational expert ("VE") testified before Administrative Law Judge ("ALJ") Bruce Mazzarella (R. 32-72). The ALJ issued a decision denying benefits on July 14, 2015 (R. 15). The Appeals Council denied plaintiff's request for review on December 29, 2016, making the ALJ's determination the final decision of the Acting Commissioner (R. 1-3). Plaintiff thereafter commenced this action.

The record reflects that plaintiff has a history of psychiatric issues starting at age six (R. 271). He was physically abused by his father (R. 254, 299) and was abandoned by his mother when he was 12 years old (R. 255). He spent his teen years in a group home (R. 254), and acknowledged a history of getting "into fights with everybody" (R. 271). He has been placed in various juvenile detention facilities due to his "aggressive, assaultive behavior". Id. He attempted suicide when he was 16 years old and was hospitalized for psychiatric treatment for an extended time. Id. He has had long standing anger issues, "7 to 10 times a day", during which he will "curse", "punch the wall", "throw things" and "break doors down". Id. He also has a history of self-injurious conduct, including punching himself in the head, running into brick walls, and cutting himself. Id. He states that he cannot hold a job because of "his attitude problem" (R. 272). He has a 10th grade education. Id.

Beginning on December 21, 2012, plaintiff was seen for some time by Dr. Dedenia Yap, a psychiatrist, who diagnosed him as suffering from impulse control disorder, and history of alcohol, marijuana and ecstasy abuse in remission. Id. Dr. Yap stated that plaintiff's condition was "moderate to severe", and assessed his Global assessment of Functioning ("GAF") at 50. Id. The GAF scale found in the Diagnostic and Statistical Manual of Mental Disorders

---

[4]  References denoted as "R." refer to the administrative record [5].

("DSM-4"), published by the American Psychiatric Association, states that a score between 41 and 50 reflects "[s]erious symptoms (e.g. suicidal ideation, sever obsessive rituals, occasional panic attacks) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)". DSM-4, p. 34. From November 2013 through March 2015, plaintiff was treated for his psychiatric issues by Nurse Practitioner ("NP") Katie Millard (R. 294-379). She reported that plaintiff's GAF continued to be assessed at 50 throughout that period (R. 314, 321, 327, 333, 339, 345, 351, 358, 364, 370).

## DISCUSSION

**A.      Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error". Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. At issue here is step five, ALJ Manzella's determination that plaintiff retains the residual functional capacity ("RFC") to perform a full range work at all exertional levels with certain non-exertional limitations (R. 19). The Acting Commissioner bears the burden of proof at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B. Did ALJ Mazzarella Properly Consider the Opinion of Nurse Practitioner Kathryn Millard?**

Plaintiff's primary contention is that ALJ Mazzarella failed to properly consider the opinion of NP Millard, resulting in a determination not supported by substantial evidence. Plaintiff's Memorandum of Law [8], p. 11. ALJ Manzarella acknowledged that NP Millard considered plaintiff to be "totally disabled" (R. 25), but gave that assessment "little weight" because he considered it to be inconsistent with treatment records and because NP Millard is not an "acceptable medical source". Id.

It is well settled that opinions from "other sources" are "important" and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file". Hunt v. Commissioner of Social Security, 2017 WL 1370996, *3 (W.D.N.Y. 2017). *See also* S.S.R. 06-03p, 2006 WL 2329939, *3. The regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive". 20 C.F.R. § 404.1527(c). The ALJ is required to weigh opinions from "other sources" based on the five factors set out in the Social Security regulations, as follows:

> "i) the frequency of examination and the length, nature, and extent of the treatment relationship; ii) the evidence in support of the physician's opinion; iii) the consistency of the opinion with the record as a whole; iv) whether the opinion is from a specialist; and v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion". Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). *See* 20 C.F.R. § 416.927(c).

Further, the ALJ should "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning". S.S.R. 06-03p, at *6.

"[A]lthough a nurse practitioner's opinion is not entitled to the same weight as a treating physician, these opinions are entitled to 'some extra consideration,' when the nurse

practitioner has a treating relationship with the patient". Beckers v. Colvin, 38 F. Supp. 3d 362, 371 (W.D.N.Y. 2014). *See* Mebane v. Commissioner of Social Security, 2016 WL 519038, *6 (W.D.N.Y. 2016) ("[h]ere, NP Alescio's opinion was the only opinion, from a longitudinal treating source, regarding plaintiff's work-related functional limitations . . . Under these circumstances, NP Alescio's opinion is entitled to greater consideration"). Indeed, "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more than the treating source and has provided better supporting evidence and a better explanation for his or her opinion". Cooley v. Berryhill, 2017 WL 3236446, *13 (W.D.N.Y. 2017). *See* S.S.R. 06-03p, at *5.

Here, NP Millard provides the only "comprehensive and current evaluation of record regarding plaintiff's work-related functional limitations", as she treated and monitored plaintiff regularly for the two-year period prior to the administrative hearing (R. 305-373). *See* Saez v. Colvin, 2016 WL 96180, *5 (W.D.N.Y. 2016) (Assessment by NP considered "the most comprehensive and current evaluation of record regarding plaintiff's work-related functional limitations"). This longitudinal relationship is particularly relevant in light of the cyclical nature of plaintiff's bipolar depression. A claimant's "residual functional capacity for work activity" reflects their ability to work "on a regular and continuing basis". 20 C.F.R. § 416.945. "Many mental illnesses are characterized by good days and bad days, rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms". Phillips v. Astrue, 413 Fed. App'x 878, 886 (7th Cir. 2010). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working". Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014).

The record is repleat with examples of the manifestations of plaintiff's anger and impulse control issues. *See* (R. 255) (plaintiff "has shown to be at times combative but overall depressed, impulsive, easily angry with others"); (R. 271) (plaintiff "shot a kid with a [BB] gun 20 times in the back"); (R. 275) (plaintiff "has a long history of being in trouble with the law as a youth and adult mainly for stealing, robbery, assaults"); (R. 302) (plaintiff "was arrested [for] assault on his best friend").

In discounting NP Millard's opinion, ALJ Mazzarella cited to references in the record reflecting isolated improvement in plaintiff's mood (R. 25). However, ALJ Mazzarella fails to reconcile the multiple examples of plaintiff's fluctuating symptoms, including: "feeling explosive all the time" (R. 330), "wishing he was dead on a daily basis" (R. 342), a report of hitting another person (R. 348), and "feel[ing] like the demon is back" (R. 354), along with others cited by plaintiff. *See* Plaintiff's Memorandum of Law [8], p. 13. "An ALJ may not 'cherry pick' from a medical opinion, *i.e.*, he or she may not credit evidence that supports administrative findings while ignoring conflicting evidence from the same source". Collins v. Colvin, 2016 WL 5529424, *3 (W.D.N.Y. 2016).

Despite the fluctuation of plaintiff's symptoms on certain dates, NP Millard's most recent overall assessment found that plaintiff's ability to function would "significantly deteriorate were he to return to any full-time employment" (R. 378). She described the plaintiff's work limitations, including: "low distress tolerance [that] negatively impacts [his] ability to function, interact with others, and manage stress" (R. 377); "significant difficulty with concentration and focus, as well as memory" (id.); "extreme difficulty with memory, short term and long term" (R. 378); and "mental health symptoms and past events [that] negatively impact

[plaintiff's] ability to socially interact". Id. This assessment is consistent with the record as a whole.

Because the ALJ relied on only certain aspects of NP Millard's reports while disregarding portions which support plaintiff's claim, his rejection of NP Millard's assessment is unsupported by substantial evidence. See Tim v. Colvin, 2014 WL 838080, *8 (N.D.N.Y. 2014) ("reliance on cherry-picked evidence does not satisfy a substantial evidence standard"). While an ALJ is not required to consider "every shred" of conflicting evidence (Acting Commissioner's Memorandum of Law [14], p. 17), "crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence". Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). In the present case, the record reflects a fluctuation of plaintiff's symptoms, including periods of decompensation in which plaintiff's symptoms worsened significantly, which is consistent with the reports and opinion of NP Millard.

ALJ Mazzarella also based his refusal to credit NP Millard's opinion upon an incorrect definition relating to the plaintiff's GAF assessments. While he correctly notes that plaintiff's GAF was assessed at 50, he states that such an assessment reflects "moderate symptoms and moderate limitations in occupational, school or social functioning" (R. 25). In fact, however, a GAF assessment between 41 and 50 reflects "[s]erious symptoms (e.g. suicidal ideation, sever obsessive rituals, occasional panic attacks) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)". DSM-4, p. 34.

Finally, ALJ Mazzarella's reliance upon the opinion consulting psychologist, Dr. Susan Santarpia (R. 25), is also flawed. Dr. Santarpia lacked a longitudinal perspective of plaintiff's symptomology, having only examined him once (R. 283). It does not appear that her

opinion was based upon a full examination of plaintiff's psychiatric records, inasmuch as she states that plaintiff did not have a history of psychiatric hospitalization. Id. Also, while the record reflects plaintiff's psychiatric history includes anxiety and panic attacks (R. 275, 305), Dr. Santarpia's report suggests no such history (R. 284). Finally, Dr. Santarpia inconsistently finds that plaintiff's symptoms are insufficient to interfere with his daily functioning, but then concludes that he does not have the ability to manage his own funds (R. 286). ALJ Mazzarella fails to make any attempt to reconcile this inconsistency. In light of these flaws, ALJ Mazzarella's reasons for discounting NP Millard's opinion, and relying upon the opinion of Dr. Santarpia, are not supported by substantial evidence. See Mebane, 2016 WL 519038, *4.

## CONCLUSION

For these reasons, Plaintiff's motion for judgment on the pleadings [8] is granted to the extent that this case is remanded for further proceedings, consistent with the matters discussed above. The defendant's motion for judgment on the pleadings [14] is denied.

Dated: November 6, 2018

     /s/ Jeremiah J. McCarthy
    JEREMIAH J. MCCARTHY
    United States Magistrate Judge